# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**STEVEN O. KAMIN,**

    **Plaintiff,**

  **v.**                                                                              **Case No. 21-CV-1139-SCD**

**KILOLO KIJAKAZI,**
*Acting Commissioner of Social Security***,**

    **Defendant.**

---

## DECISION AND ORDER

---

Plaintiff Steven Kamin applied for social security disability insurance benefits due to a combination of physical and mental health impairments. His claim was denied, and the denial was affirmed following a hearing before an Administrative Law Judge (ALJ) employed by the Social Security Administration (SSA).

Kamin now seeks judicial review of the ALJ's decision because he believes that the ALJ erred in finding parts of the consultative examiner's opinion unpersuasive. He also argues that the ALJ did not have substantial evidence on which to base the residual functional capacity (RFC) that she assigned to Kamin, and he further argues that the ALJ did not conduct a legally sufficient symptoms assessment. ECF No. 12 at 7. Kilolo Kijakazi, the Acting Commissioner of the SSA, maintains that the ALJ did not commit reversible error. I agree with Kijakazi and affirm the SSA's determination that Kamin is not disabled.

## BACKGROUND

Kamin has alleged disability since December 2015 due to a number of conditions including degenerative disc disease, degenerative joint disease of the left foot, flat feet, obesity, major depressive disorder, generalized anxiety disorder, posttraumatic stress disorder (PTSD), and attention deficit hyperactivity disorder (ADHD). R. 13, 16. His claim was denied initially and on reconsideration. R. 210-218, 220-225. Kamin then had a hearing before ALJ Blair, who denied his claim for benefits. R. 154-167. The Appeals Council (AC) remanded the case for a new hearing before ALJ Rouf, who also denied benefits. R. 174-175, 180-196. The AC once again reversed. ALJ Parker conducted another hearing, and the decision resulting from that hearing is the decision I will now review. R. 13-28.

### I. Kamin's Background and Hearing Testimony

Kamin was born in 1969.[1] R. 44. He served in the military after graduating high school. *Id*. Following his divorce in 2012 through the time of the hearing before ALJ Parker, Kamin lived with his parents in their home in Porterfield, Wisconsin. R. 45. He previously worked in several manual labor-intensive roles, including as a plumber, a welder, and a bond room technician. R. 46, 49, 50.

Perhaps due to these highly physical professions, Kamin suffered from numerous joint conditions, including back pain and foot pain. Kamin alleged that because of this pain he has a difficult time exercising, and can only walk about the circumference of a football field. R. 59. Although Kamin testified that he does chores like mowing the grass and errands like grocery shopping, he also claims that he suffers incapacitating back pain for days after doing

---

[1] The transcript is filed on the docket at ECF No. 9 to ECF No. 9-32.

these things. R. 60. Kamin testified that he could stand for a maximum of seven to ten minutes and sit for about forty-five minutes. R. 65.

Kamin also testified that he has other physical ailments which make daily life more difficult. On return from his deployment in Afghanistan, he had to have foot surgery to put two pins in his feet, which resulted in flat feet that he attempted to address with orthotics[2] in his shoes. R. 58, 61. Kamin also suffered from a hiatal hernia which interfered with his breathing and caused him acid reflux. R. 62.

The ALJ also heard testimony from the Vocational Expert (VE). The VE testified that Kamin had six occupational titles in his relevant work history: a plumber, a general inspector, an electric motor repairer, general assembler installer, production line welder, and a bending machine operator. She further testified that an individual of Kamin's background with the same RFC as the one ultimately assigned to Kamin by the ALJ could not perform any of Kamin's past relevant work. R. 69. The VE testified that there also weren't any jobs available in significant numbers in the national economy that a person with this RFC could perform. *Id*. The ALJ modified her hypothetical to include a sedentary rather than light exertional level, and the VE testified that there were several jobs such a person could work, including as a telephone solicitor, a final assembler, and an order clerk. R. 69-72.

II.     **ALJ Parker's Decision**

The ALJ issued a decision on December 28, 2020, denying Kamin's claim. *See* R. 13-28. In applying the five-step disability evaluation framework,[3] the ALJ found at step one that Kamin had not engaged in substantial gainful activity from the alleged onset of disability to

---

[2] Kamin claimed to wear "prosthetics" in his shoes to alleviate pain from his flat feet but based on context and the lack of evidence of amputations, I will assume that he meant orthotics.
[3] 20 C.F.R. § 404.1520(a)(4) outlines the process for evaluating a disability claim.

the date last insured. R. 16. At step two, the ALJ found that Kamin had the following severe impairments: lumbar and cervical degenerative disc disease, degenerative joint disease left foot, flat foot impairment, obesity, major depressive disorder, generalized anxiety disorder, PTSD, and ADHD. *Id*. The ALJ observed that Kamin's other impairments were non-severe because they either resolved within twelve months, did not require significant treatment, did not cause more than minimal limitations, or were controlled with medication. *Id*.

At step three, the ALJ found that Kamin's conditions did not, singly or in combination, meet or medically equal the severity of one of the listed impairments. R. 17. As part of this analysis, the ALJ considered Kamin's mental functioning in the four paragraph B criteria. R. 17-18. The ALJ found that Kamin had mild limitations in understanding, remembering, and applying information. R. 18. The ALJ found that Kamin had moderate limitations in interacting with others; concentrating, persisting, and maintaining pace; and adapting and managing himself. *Id*.

The ALJ determined that Kamin had the residual functional capacity to perform light[4] work, with the additional limitation that he can sit for six hours and stand or walk four hours in an eight-hour day with some additional postural and manipulation limitations. R. 19. The ALJ stated that Kamin's work environment could have no more than moderate noise intensity and occasional changes. *Id*. She stated that Kamin could carry out simple instructions, maintain concentration for two-hour intervals with routine breaks, and could make simple work-related decisions. *Id*. Finally, she found that Kamin could occasionally

---

[4] This appears to be an error, but a harmless one. The VE testified that a person with this RFC could not perform any jobs available in significant numbers, but when the ALJ tweaked the hypothetical to "sedentary work" instead of "light work," the VE listed several jobs that the hypothetical individual could perform, and those are the jobs that ALJ cites Kamin as being able to perform despite his conditions. As such, while it is an error to find that Kamin could perform jobs at this RFC, because the ALJ only cited jobs that Kamin could perform at a sedentary RFC, the error is harmless.

interact with supervisors and co-workers and could tolerate occasional face-to-face interaction with the public. *Id*. In so limiting Kamin, the ALJ found that while Kamin's medically determinable impairments could reasonably be expected to cause his alleged symptoms, his statements as to the intensity and persistence of his symptoms were inconsistent with other evidence in the record. R. 19-20.

The ALJ first considered Kamin's back problems. In conjunction with his degenerative disc disease, Kamin experienced muscle spasms and radiating pain from his left leg to his ankle. R. 20. Rest and a heating pad eased some of his pain. *Id*. His chiropractor documented several abnormalities and a reduced range of motion in Kamin's spine. *Id*. An MRI of Kamin's lumbar spine showed mild facet degenerative joint changes but did not show significant neural foramen narrowing, disc degeneration, or spinal stenosis. *Id*. An MRI of Kamin's cervical spine showed two mild disc bulges, but no spinal stenosis or significant neural foramen narrowing. *Id*. Radiographs of his spine showed moderate intervertebral disc space narrowing, mild hypertrophic degenerative disease, and a mild compression deformity with minimal anterior wedging. *Id*. To treat his condition, he received occasional spinal injections, physical therapy, chiropractic manipulation, acupuncture, and medication, and he only saw temporary improvement with spinal injections. *Id*.

In relation to Kamin's foot pain post-surgery, the ALJ noted that Kamin's treatment notes listed Kamin as suffering from intermittent shooting pain, weakness, and occasional instability in the left ankle. R. 21. The ALJ also noted that Kamin's foot surgery alleviated some of his pain, but resulted in flat foot, which in turn caused Kamin difficulty walking and standing. *Id*. June 2014 X-rays showed only mild degenerative changes of the first and second MTP joints. *Id*. The ALJ also noted that Kamin was obese with a BMI of 43.65, which

affected his ability to perform routine movements and may have exacerbated his foot and back problems. *Id*.

Despite all of this, the ALJ observed, Kamin still frequently demonstrated full strength in all limbs on examination, a full range of motion, and normal grip, reflexes, sensation, gait and station. R. 22. Radiographs of his foot showed only mild degenerative changes and no deformity of his ankle. *Id*. The ALJ also noted that while Kamin occasionally used a cane, no objective evidence supported a conclusion that he *needed* a cane to ambulate because health care providers observed normal gait and station. *Id*. Based on all this evidence, the ALJ found that while Kamin certainly had some physical limitations, they were not disabling and Kamin could still perform work within the RFC. *Id*.

Finally, the ALJ described Kamin's mental RFC. Kamin's medical history included periods of depressed mood, low energy, hyper-alertness, impatience, impulsivity, concentration difficulties, isolation, flashbacks, sleep disturbance, and suicidal ideation. R. 21. Kamin's medical records from the VA documented ongoing anxiety and depression from his service in the Gulf War. *Id*. These symptoms were exacerbated by psychosocial stressors like his divorce and financial struggles. Kamin's PTSD caused him to be startled easily and hypervigilant in large crowds. *Id*. Treatment notes also documented recurrent, intrusive recollections related to his PTSD and military service. *Id*. At some points over the course of treatment, he took medications like Hydroxyzine and Paroxetine. *Id*.

Even with all these symptoms and stressors, the ALJ noted that Kamin exhibited normal speech, mood, affect, memory, insight, and judgment on examination and expressed that his depression "feels pretty well controlled." R. 23. Kamin also reported to his doctors that his therapy and medication regime had been largely successful at reducing and

eliminating major episodes of depression or anxiety. *Id*. The ALJ further explained that the activities of Kamin's daily life suggest that he was not as limited as alleged, because he continued to perform household chores, shopped, cared for his dog, and drove a car. *Id*.

Next, the ALJ described which medical opinions she found persuasive. The ALJ gave "some weight" to the opinions of the state agency psychiatric consultants Drs. Jusino-Berrios and Donahoo. R. 24. Dr. Jusino-Berrios opined that claimant had only a mild limitation in mental functioning, and Dr. Donahoo found that Kamin had no limitations. The ALJ noted that these opinions were consistent with clinical evidence showing good mental functioning with treatment and normal examination results. *Id*. However, the ALJ did not find these opinions fully persuasive because Kamin's hearing testimony was more consistent with moderate limitations in mental functioning which required greater restrictions than the doctors had advised. *Id*.

The ALJ also gave the opinion of consultative psychological examiner Dr. King "some weight." *Id*. Where Dr. King opined that Kamin would have moderate difficulties remembering and carrying out instructions, the ALJ found that he would be less limited based on his ability to take care of his pets, prepare meals, and drive. *Id.* Dr. King also found that Kamin had mild difficulties responding appropriately to supervisors and coworkers. The ALJ found that this was consistent with reported anxiety and irritability. The ALJ agreed with Dr. King that Kamin had a moderate limitation in his ability to concentrate, persist, and maintain pace, consistent with his ADHD, but also with his reports of being able to complete chores and activities. *Id*. The only apparent departure from Dr. King's opinion is the ALJ's finding that Kamin was only moderately limited in his ability to withstand routine work stress and adapt to change, rather than moderately to severely limited in that ability. The ALJ defended

this finding by pointing out that although Kamin reported difficulties handling stress and changes in routine, "he was able to maintain a wide range of daily activities independently, in addition to taking care of his pets and helping his elderly parents." *Id*.

Next, the ALJ stated that she gave little weight to VA's finding of 90% service-connected disabilities. R. 25. She reasoned that because the VA and SSA have completely different methods for evaluating a person's diminution in health, a finding of disability under one method did not bear on potential disability under the other method. She found evidence of Kamin's disabled license plate similarly unpersuasive.

The ALJ found the opinion of state agency medical consultant Dr. Foster unpersuasive because he did not find Kamin to be as seriously limited as the ALJ believed the evidence demonstrated. Dr. Foster opined that Kamin could work at a medium exertional level with frequent stooping and crouching based on the reasonable physical function demonstrated on exam. However, the ALJ found that when also considering the diagnostic imaging showing degenerative processes in the spine and Kamin's own testimony of pain and difficulty standing and moving, Kamin was more limited than Dr. Foster's opinion would suggest.

At step four of the five-step process, the ALJ found that Kamin would not be able to work in any of his past relevant jobs. R. 26. At step five, she found that there were still jobs available in significant numbers in the national economy in which Kamin could work, including as a telephone solicitor, final assembler, or order clerk. R. 26-27. As such, the ALJ determined that Kamin was not disabled under Social Security regulations. R. 27.

The AC denied Kamin's request for review on July 30, 2021, *see* R. 1-6, making the ALJ's decision a final decision of the Commissioner. *See Loveless v. Colvin*, 810 F.3d 502, 506 (7th Cir. 2016).

On October 4, 2021, Kamin filed this action seeking judicial review of the decision denying his claim for disability benefits under 42 U.S.C. § 405(g). *See* ECF No. 1. His case was assigned to me after all parties consented to magistrate-judge jurisdiction under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b). *See* ECF No. 3, 6. Kamin filed a brief in support of his disability claim, ECF No. 12; Kijakazi filed a brief in support of the ALJ's decision, ECF No. 19; and Kamin filed a reply brief, ECF No. 20.

## APPLICABLE LEGAL STANDARDS

Under 42 U.S.C. § 405(g), a claimant may seek judicial review of a final administrative decision of the Social Security Commissioner. In such a case, a judge has the power to affirm, reverse, or modify the Commissioner's final decision. *Melkonyan v. Sullivan*, 501 U.S. 89, 99–100 (1991). The court can remand a matter to the Commissioner in two ways: it may remand "in conjunction with a judgment affirming, modifying, or reversing the [Commissioner's] decision," or it "may remand in light of additional evidence without making any substantive ruling as to the correctness of the [Commissioner's] decision." *Id.* Here, Kamin seeks remand in conjunction with a decision reversing the Commissioner's decision.

The court will reverse the Commissioner's final decision only if the denial of disability benefits is "based on incorrect legal standards or less than substantial evidence." *Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020) (citing *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000)). Substantial evidence simply means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Martin*, 950 F.3d at 373 (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)). The court "may not re-weigh the evidence or substitute its own judgment for that of the ALJ." *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004) (citing *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). It is limited to

evaluating whether the ALJ has built an "accurate and logical bridge between the evidence and the result." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (citing *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003); *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001)).

## DISCUSSION

Kamin alleges that the ALJ made three reversible errors. First, he suggests that the ALJ erred by not providing substantial support for her decision to deviate from the consultative examiner's conclusion. Second, Kamin argues that the ALJ did not have substantial evidence to support the RFC that she assigned to him. Third, Kamin alleges that the ALJ did not conduct a legally sufficient symptoms assessment.

### I. The ALJ's Assessment of the Consultative Examiner's Opinion

Kamin argues that the ALJ did not properly address Dr. King's opinion in three ways. First, he argues that the ALJ did not have a supported basis for discounting Dr. King's opinion that Kamin's mental conditions imposed moderate to severe difficulties handling routine work stress and adapting to changes. Second, Kamin argues that the ALJ ignored the portion of Dr. King's opinion limiting Kamin from interaction with the public. Third, Kamin argues that the ALJ failed to adequately address the supportability and consistency of Dr. King's opinion, and as such, should have found the opinion more persuasive.

#### A. Substantial basis for discounting Dr. King's opinion

I find that the ALJ had substantial evidence on which she based her determination that Kamin was only moderately limited in his ability to adapt to change and tolerate stress, both of which fall under the broad functional category of adapting and managing oneself.

Kamin takes issue with the ALJ's statement that "[w]hile the claimant reported difficulties with handling stress and changes in routine, he was able to maintain a wide range

of daily activities independently, in addition to taking care of his pets and helping his elderly parents." Kamin argues that taking care of family and pets does not relate to his ability to handle stress and adapt to changes in the workplace. Kamin asserts that the ALJ impermissibly substituted her own lay opinion for Dr. King's medical opinion in finding that Kamin was only moderately limited in his ability to adapt to changes and tolerate stress.

The ALJ provided adequate justification for rejecting Dr. King's opinion. The Social Security Regulations permit reliance on evidence of daily activities to determine a claimant's degree of paragraph B limitations. A claimant "use[s] the same four areas of mental functioning in daily activities at home . . . that [the claimant] would use to function at work," amd "[i]nformation about [a claimant's] daily functioning can help [the SSA] understand whether [the claimant's] mental disorder limits one of more of these areas." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(F)(3)(b). Therefore, the ALJ could permissibly rely on evidence of daily activities that Kamin performed successfully, including pet care, elder care, preparing meals and driving a car as weighing against Dr. King's testimony that Kamin may have had severe limitations in adapting and managing himself.

Furthermore, the ALJ previously explained at step two why she found Kamin was only moderately limited in his ability to adapt and manage himself. She explained that Kamin reported that he had no problems with personal care and hygiene and that he handled changes in routine well. R. 18 (citing Kamin's "Activities of Daily Living" report located at R. 569-576). Considering all these pieces of evidence, the ALJ had substantial evidence on which to base her finding that Kamin was only moderately limited in his ability to adapt and manage himself.

### B. Limitations on interaction with the public

Kamin next claims that the ALJ ignored Dr. King's opinion that Kamin would have marked difficulties interacting with the public because the ALJ found that Kamin could occasionally interact face to face with the public. However, the ALJ adequately explained why she believed Kamin only had moderate difficulties interacting with others; she does not need to address every single piece of evidence in the record. *See Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009) (an ALJ "need not discuss every piece of evidence in the record," but she also "may not ignore an entire line of evidence that is contrary to the ruling."). The ALJ did not ignore an entire line of evidence contrary to her ruling, and she discussed evidence on both sides of this issue. The ALJ considered Kamin's reports of feelings of depression, anxiety and irritability, but found that they conflicted with Kamin's own statements in his Function Report in which he stated that he "gets along with authority figures, family, friends, neighbors, and others." R. 18 (citing Activities of Daily Living report dated 4/20/15 at R. 569-576). The ALJ also considered Kamin's medical providers' notes that Kamin was cooperative, did not have difficulty maintaining eye contact, and demonstrated appropriate mood. *Id.* (citing VA hospital reports at R. 1552-1754, 1893-2090, 2091-2123). The ALJ also properly relied on Drs. Jusino-Berrios and Donahoo's opinions that Kamin was not seriously limited in this capacity. R. 24 (citing R. 129-149). The ALJ did not err by failing to address one solitary piece of evidence related to social functioning when she gave due consideration to evidence regarding Kamin's social functioning as a whole.

### C. Consistency with other medical evidence

Finally, Kamin asserts that the ALJ failed to consider the consistency of Dr. King's opinion with other evidence like the VA treatment providers' notes documenting irritability,

mood disturbances, and anger. However, this argument amounts to a request that I reweigh the evidence. Contrary to Kamin's assertions, the ALJ did address the consistency of Dr. King's opinion with other evidence. In discussing the persuasive value of Dr. King's opinions, the ALJ noted where they were and were not consistent with other evidence of Kamin's daily activities and demonstrated normal functioning on examination with doctors.[5] *See* R. 24. The ALJ's opinion is not error just because it is inconsistent with one line of evidence, particularly because the ALJ adequately explained why she did not find the VA evidence persuasive.

## II. Substantial Support for the Mental Functional Capacity

An ALJ must base her opinion, including the RFC portion, on substantial evidence. Substantial evidence is not a high bar. It is only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Martin*, 950 F.3d at 373. Likewise, the ALJ's duty to build an accurate and logical bridge between the evidence and the result is not an overly exacting task; the ALJ's decision simply "must rest its denial of benefits on adequate evidence contained in the record and must explain why contrary evidence does not persuade." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). In evaluating the persuasive value of the evidence, an ALJ must only "minimally articulate his or her justification for rejecting or accepting specific evidence of a disability." *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004).

The ALJ provided several mental limitations in Kamin's RFC. She limited Kamin to performing simple unskilled work, maintaining attention and concentration for two-hour intervals, making simple work-related decisions, tolerating occasional changes, and

---

[5] Kamin conveniently does not mention the inconsistency of Dr. King's opinion with other relevant medical evidence in the record. The state agency psychological consultants reviewing Kamin's record did not find any more than mild limitations in Kamin's mental functioning. Dr. Jusino-Berrios reported that the "mental exam was majorly normal." He noted that Kamin "does not need encouragement doing things, goes out everyday [sic], walks, drives a car, . . . able to handle money, spends time with others, can pay attention long [sic] as needed, follws [sic] written and spoken instructions well." R. 133.

occasionally interacting with supervisors, coworkers, and the public. R. 19. In reviewing the evidence, the ALJ found that the state agency psychological consultants underestimated the severity of Kamin's mental limitations, and the consultative examiner slightly overestimated their severity. R. 24. Accordingly, she found that Kamin's true degree of limitations lay somewhere in the middle, so she did not wholly adopt any of the state physician's opinions.

However, Kamin argues that "by not adopting any of the physician opinion evidence," the ALJ failed to build an accurate and logical bridge between the evidence and her conclusions. ECF No. 12 at 11. Kamin makes two related sub-arguments. The first merely reprises his earlier argument that the ALJ should have adopted Dr. King's opinion, and that by finding Dr. King's opinion unpersuasive, the ALJ impermissibly substituted her own lay opinion for Dr. King's medical opinion. Second, Kamin argues that the ALJ did not provide adequate limitations for Kamin's moderate limitations in concentration, persistence and pace.

First of all, the ALJ was not required to adopt Dr. King's opinion and did not impermissibly substitute her lay opinion. An ALJ is not required to adopt any medical opinion in determining a claimant's RFC. *See Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007), (the ALJ "is not required to rely entirely on a particular physician's opinion or choose between the opinions of any of the claimant's physicians."). The ALJ's role is merely to base her opinion on "adequate evidence," and explain why other evidence does not persuade. *See Berger*, 516 F.3d at 544. I have already explained that the ALJ provided adequate support for rejecting portions of Dr. King's opinion. For similar reasons, I find that the ALJ likewise provided adequate support for assigning Kamin a less restrictive RFC than Dr. King suggested. The ALJ explained that several providers found Kamin to have "goal-directed thought process, normal speech, normal mood, normal affect, normal memory, normal insight, [and] normal

judgment." R. 23 (citing records from four different VA treatment records). She explained that treatment notes indicated improvement in mental health with treatment. *Id*. (citing mental health records from the VA at R. 1552-1754). She explained that his reports of daily activities supported an ability to run errands and do chores. *Id*. (citing Kamin's Function Report dated 3/26/14 at R. 516-523, Activities of Daily Living reports dated 9/24/14 and 4/20/15 at R. 552-560, 569-576). She explained that state agency psychiatric consultants' findings of no severe mental impairments supported a finding of generally good mental function. R. 24 (citing Title Physical RFC dated 12/15/14 at R. 129-138). None of this is the ALJ's lay opinion. The ALJ based her opinion on a wealth of medical evidence.

Additionally, Kamin has not shown that the ALJ erred in determining that the RFC adequately addressed his moderate limitations in concentration, persistence and pace. The ALJ provided several limitations in the RFC that fall under the umbrella of concentration, persistence, and pace limitations, including (1) no more than moderate noise intensity in his work environment, (2) simple instructions, (3) maintaining concentration for two-hour periods over an eight-hour day with regular breaks, and (4) simple work-related decisions. R. 19. Yet Kamin still argues that "the ALJ included no concentration, persistence, or pace limitations." ECF No. 12 at 12. Kamin is correct that the Seventh Circuit has found that including *no* limitations for a claimant with moderate limitations in concentration, persistence, and pace can be reversible error, but he does not explain how the above listed CPP limitations are insufficient, nor does he propose alternative limitations that should have been included. Because Kamin has not explained why the RFC limitations did not sufficiently account for moderate CPP limitations, he has failed to demonstrate that the ALJ reversibly erred.

### III. Legal Sufficiency of Symptoms Assessment

Finally, Kamin argues that the ALJ wrongly interpreted certain pieces of evidence as undercutting Kamin's reports of debilitating symptoms. Specifically, he takes issue with the ALJ's opinions that (1) doing chores and watching TV suggested that Kamin's pain was not as severe as alleged, (2) Kamin's ability to drive undermined his claims of difficulty focusing, (3) Kamin's brief attempt to return to work supported a finding that he could return to work, and (4) "Kamin's conservative treatment undercut his claims" of disabling symptoms, to which Kamin protests that the ALJ "did not explain why she perceived a more aggressive course would be warranted." As to the fourth opinion, Kamin seems to miss the ALJ's point. The ALJ opined that Kamin's conditions improved with conservative treatment, suggesting that he was less limited than he had been before treatment. Her point was that a more aggressive course would *not* be warranted, because modest treatment methods had worked.

As to the first three opinions, I find that the ALJ committed, at most, harmless error. An error is harmless when the court is convinced that the ALJ would reach the same result on remand. *See Lambert v. Berryhill*, 896 F.3d 768, 776 (7th Cir. 2018). Kamin's TV-watching, driving, and attempt to return to work all contributed only minimally to the ALJ's determination that Kamin was not disabled. As previously explained, the ALJ had plenty of medical evidence and testimonial evidence to support her opinion, even in the absence of these three things. The ALJ provided substantial support for her finding that Kamin's symptoms were not as intense or persistent as alleged.

## CONCLUSION

For all of the reasons explained above, I find that (1) Kamin has not demonstrated that the ALJ committed reversible error; and (2) substantial evidence supported the ALJ's decision. Thus, I **AFFIRM** the Commissioner's decision. The clerk of court shall enter judgment accordingly.

**SO ORDERED** this 10th day of February, 2023.

_____
STEPHEN C. DRIES
United States Magistrate Judge